**THE ROSEN LAW FIRM, P.A.**
Phillip Kim, Esq.
275 Madison Avenue, 40th Floor
New York, New York 10016
Telephone: (212) 686-1060
Fax: (212) 202-3827
Email: pkim@rosenlegal.com

*Counsel for Plaintiff*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No.

MATT FORTUNE, Individually and on behalf
of all others similarly situated,

      Plaintiff,

      v.

IBOTTA, INC., BRYAN LEACH, SUNIT
PATEL, STEPHEN BAILEY, AMANDA
BALDWIN, AMIT N. DOSHI, THOMAS
LEHRMAN, VALARIE SHEPPARD, LARRY
W. SONSINI, GOLDMAN SACHS & CO.
LLC, CITIGROUP GLOBAL MARKETS
INC., BOFA SECURITIES, INC., EVERCORE
GROUP L.L.C., UBS SECURITIES LLC,
WELLS FARGO SECURITIES, LLC,
CITIZENS JMP SECURITIES, LLC,
NEEDHAM & COMPANY, LLC, and
RAYMOND JAMES & ASSOCIATES, INC.,

      Defendants.

## PLAINTIFF'S CLASS ACTION COMPLAINT
## FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

Plaintiff Matt Fortune ("Plaintiff"), individually and on behalf of all other persons

similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against

Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff

and Plaintiff's own acts, and information and belief as to all other matters, based upon, among other things, the investigation conducted by and through his attorneys, which included, among other things, a review of the Defendants' public documents, public filings, wire and press releases published by and regarding Ibotta, Inc. ("Ibotta" or the "Company"), and information readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.      This is a class action on behalf of persons or entities who purchased or otherwise acquired publicly traded Ibotta securities pursuant and/or traceable to the registration statement and related prospectus (collectively, the "Registration Statement") issued in connection with Ibotta's April 18, 2024 initial public offering (the "IPO" or "Offering"). Plaintiff seeks to recover compensable damages caused by Defendant's violations of the federal securities laws under the Securities Act of 1933 (the "Securities Act").

## JURISDICTION AND VENUE

2.      The claims asserted herein arise under and pursuant to Sections 11, 12(a)(2) and 15 of the Securities Act, 15 U.S.C. §§77k, 77l(a)(2), and 77o.

3.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1331 and Section 22 of the Securities Act (15 U.S.C. §77v).

4.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) and §22(a) of the Securities Act (15 U.S.C. §77v(a)). Substantial acts in furtherance of the alleged misconduct or the effects of the misconduct have occurred in this Judicial District. Many of the acts charged herein, including the dissemination of materially false and/or misleading information, occurred in substantial part in this Judicial District. The Company is also headquartered in this judicial district.

5.      In connection with the acts, conduct and other wrongs alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

6.      Plaintiff, as set forth in the accompanying certification, incorporated by reference herein, purchased Ibotta securities pursuant and/or traceable to the IPO and was economically damaged thereby.

7.      Defendant Ibotta purports to be a technology company that allows consumer packaged goods brands to deliver digital promotions to millions of consumers through its network called the Ibotta Performance Network.

8.      Ibotta is incorporated in the state of Delaware, and its head office is located at 1801 California Street, Suite 400, Denver, CO, 80202. Ibotta's common stock trades on the New York Stock Exchange ("NYSE") under the ticker symbol "IBTA."

9.      Defendant Bryan Leach ("Leach") is the founder of Ibotta and served as the Company's Chief Executive Officer ("CEO"), President, and Chairman of the Board at all relevant times.

10.     Defendant Sunit Patel ("Patel") served as the Company's Chief Financial Officer ("CFO") at all relevant times.

11.     Stephen Bailey ("Bailey") served as a director of the Company at the time the Registration Statement was declared effective. Defendant Bailey reviewed and contributed to the Registration Statement and is identified therein as a director.

3

12. Amanda Baldwin ("Baldwin") served as a director of the Company at the time the Registration Statement was declared effective. Defendant Baldwin reviewed and contributed to the Registration Statement and is identified therein as a director.

13. Amit N. Doshi ("Doshi") served as a director of the Company at the time the Registration Statement was declared effective. Defendant Doshi reviewed and contributed to the Registration Statement and is identified therein as a director.

14. Thomas Lehrman ("Lehrman") served as a director of the Company at the time the Registration Statement was declared effective. Defendant Lehrman reviewed and contributed to the Registration Statement and is identified therein as a director.

15. Valarie Sheppard ("Sheppard") served as a director of the Company at the time the Registration Statement was declared effective. Defendant Sheppard reviewed and contributed to the Registration Statement and is identified therein as a director.

16. Larry W. Sonsini ("Sonsini") served as a director of the Company at the time the Registration Statement was declared effective. Defendant Sonsini reviewed and contributed to the Registration Statement and is identified therein as a director.

17. Defendants Leach, Patel, Bailey, Baldwin, Doshi, Lehrman, Sheppard, and Sonsini are collectively referred to herein as the "Individual Defendants." The Individual Defendants signed the Registration Statement, solicited the investing public to purchase securities issued pursuant thereto, hired and assisted the underwriters, planned and contributed to the IPO and Registration Statement, and attended road shows and other promotions to meet with and present favorable information to potential Ibotta investors, all motivated by their own and the Company's financial interests.

18.     Defendant Goldman Sachs & Co. LLC ("Goldman Sachs") is an investment banking firm that acted as an underwriter of Ibotta's IPO, helping to draft and disseminate the IPO documents. Goldman Sachs' address is 200 West Street, New York, NY 10282.

19.     Defendant Citigroup Global Markets Inc. ("Citigroup") is an investment banking firm that acted as an underwriter of Ibotta's IPO, helping to draft and disseminate the IPO documents. Citigroup's address is 390 Greenwich Street, New York, NY 10013.

20.     Defendant Bofa Securities, Inc. ("Bofa") is an investment banking firm that acted as an underwriter of Ibotta's IPO, helping to draft and disseminate the IPO documents. Bofa's address is 711 5th Ave, New York, NY 10022.

21.     Evercore Group L.L.C. ("Evercore") is an investment banking firm that acted as an underwriter of Ibotta's IPO, helping to draft and disseminate the IPO documents. Evercore's address is 55 East 52nd Street, New York, NY 10055.

22.     UBS Securities LLC ("UBS") is an investment banking firm that acted as an underwriter of Ibotta's IPO, helping to draft and disseminate the IPO documents. UBS's address is 1285 Avenue of the Americas, New York, NY 10019.

23.     Wells Fargo Securities, LLC ("Wells Fargo") is an investment banking firm that acted as an underwriter of Ibotta's IPO, helping to draft and disseminate the IPO documents. Wells Fargo's address is 550 South Tryon Street, 6th Fl., Charlotte, NC, 28202.

24.     Citizens JMP Securities, LLC ("JMP") is an investment banking firm that acted as an underwriter of Ibotta's IPO, helping to draft and disseminate the IPO documents. JMP's address is 101 California Street, Ste 1700, San Francisco, CA 94111.

25.    Needham & Company, LLC ("Needham") is an investment banking firm that acted as an underwriter of Ibotta's IPO, helping to draft and disseminate the IPO documents. Needham's address is 250 Park Avenue, 10th Fl., New York, NY 10177.

26.    Raymond James & Associates, Inc. ("Raymond James") is an investment banking firm that acted as an underwriter of Ibotta's IPO, helping to draft and disseminate the IPO documents. Raymond James's address is 880 Carillon Parkway, St. Petersburg, FL 33716.

27.    Defendants Goldman Sachs, Citigroup, Bofa, Evercore, UBS, Wells Fargo, JMP, Needham, and Raymond James are referred to herein as the "Underwriter Defendants."

28.    Pursuant to the Securities Act, the Underwriter Defendants are liable for the false and misleading statements in the Registration Statement as follows:

(a)    The Underwriter Defendants are investment banking houses that specialize in, among other things, underwriting public offerings of securities. They served as the underwriters of the IPO and shared millions of dollars in fees collectively. The Underwriter Defendants arranged a multi-city roadshow prior to the IPO during which they, and representatives from Ibotta, met with potential investors and presented highly favorable information about the Company, its operations and its financial prospects.

(b)    The Underwriter Defendants also demanded and obtained an agreement from Ibotta and the Individual Defendants that Ibotta would indemnify and hold the Underwriter Defendants harmless from any liability under the federal securities laws.

(c)    Representatives of the Underwriter Defendants also assisted Ibotta and the Individual Defendants in planning the IPO, and purportedly conducted an adequate and reasonable investigation into the business and operations of Ibotta, an undertaking known as a "due diligence" investigation. The due diligence investigation was required of the

Underwriter Defendants in order to engage in the IPO. During the course of their "due diligence," the Underwriter Defendants had continual access to internal, confidential, current corporate information concerning Ibotta's most up-to-date operational and financial results and prospects.

(d)    In addition to availing themselves of virtually unlimited access to internal corporate documents, agents of the Underwriter Defendants met with Ibotta's lawyers, management and top executives and engaged in "drafting sessions." During these sessions, understandings were reached as to: (i) the strategy to best accomplish the IPO; (ii) the terms of the IPO, including the price at which Ibotta securities would be sold; (iii) the language to be used in the Registration Statement; what disclosures about Ibotta would be made in the Registration Statement; and (iv) what responses would be made to the SEC in connection with its review of the Registration Statement. As a result of those constant contacts and communications between the Underwriter Defendants' representatives and Ibotta's management and top executives, the Underwriter Defendants knew of, or in the exercise of reasonable care should have known of, Ibotta's existing problems as detailed herein.

(e)    The Underwriter Defendants caused the Registration Statement to be filed with the SEC and declared effective in connection with the offers and sales of securities registered thereby, including those to Plaintiff and the other members of the Class.

29.    Ibotta, the Individual Defendants, and the Underwriter Defendants are collectively referred to herein as "Defendants."

## SUBSTANTIVE ALLEGATIONS
### Ibotta's False and/or Misleading Registration Statement

30.    On March 22, 2024, Ibotta filed with the SEC a registration statement on Form S-

1 which in combination with subsequent amendments on Forms S-1/A and filed pursuant to Rule 424(b)(4), would be used for the IPO.

31.     On April 18, 2024, Ibotta filed with the SEC the final prospectus for the IPO of common stock on Form 424B4 (the "Prospectus"), which forms part of the Registration Statement. In the IPO, Ibotta sold 2.5 million shares at $88.00 per share, with selling stockholders offering an additional 4 million shares. The Company received gross proceeds of approximately $206.8 million in offering proceeds, after deducting underwriting discounts and commissions, but before other expenses.

32.     The Registration Statement was negligently prepared and, as a result, contained untrue statements of material facts or omitted to state other facts necessary to make the statements made not misleading, and was not prepared in accordance with the rules and regulations governing its preparation.

33.     Under applicable SEC rules and regulations, the Registration Statement was required to disclose known trends, events or uncertainties that were having, and were reasonably likely to have, an impact on the Company's continuing operations.

34.     The Registration Statement stated, in relevant part, the following concerning its business model:

> "Our technology allows CPG [consumer packaged goods] brands to deliver digital promotions to over 200 million consumers through a single, convenient network called the Ibotta Performance Network (IPN). We are pioneers in success-based marketing: we only get paid when our client's promotion results in a sale, not when a consumer merely views or clicks on the promotion.
>
> *       *       *
>
> Ibotta also partners with several other leading retailer publishers. For example, Ibotta partners with Family Dollar, a subsidiary of Dollar Tree, Inc. We also work indirectly to publish offers on certain retailer properties, including Kroger (powering Kroger Cash) and Shell (powering Shell Fuel Rewards)."

35.    The Registration Statement included the following warnings, in pertinent part, in

its Risk Factors:

"***Our business, financial condition, results of operations, and prospects will be adversely affected if we do not renew, maintain, and expand our relationships with existing publishers and add new publishers to the IPN, or if our publishers experience (as they have previously) downturns, store closures, or failures of their own businesses, or fail to adopt our additional offerings or fulfillment methods.***

Our business, financial condition, results of operations, and prospects will be adversely affected if we do not renew, maintain, and expand our relationships with existing publishers and add new publishers to the IPN. ***We provide offers on a white-label basis to*** Walmart Inc., a Delaware corporation (Walmart), Dollar General Corporation (Dollar General), Shell plc (Shell), Exxon Mobil Corporation (Exxon), ***The Kroger Co.***, (Kroger), and other retailers. We have invested heavily in the IPN, which matches and distributes offers across a variety of publisher sites. Our contract negotiation process with such publishers can be lengthy, which can contribute to variability in our revenue generation and makes our revenue difficult to forecast. As a result, it is difficult to predict our ability to form new partnerships with publishers, and our revenue could be lower than expected, which would have an adverse effect on our business, financial condition, results of operations, and prospects.

We match and distribute our digital offers through large retailer publishers, grocery retailers, and Ibotta D2C properties. If we do not renew, maintain and expand these relationships or add new publishers, our business will be negatively affected. We rely heavily on our publishers to match and distribute our digital promotions content, with a substantial portion of our white-label redemptions originating from offer selections on their websites and mobile applications. In particular, the Walmart Program Agreement is a multi-year arrangement and automatically renews for successive twenty-four month periods unless either party provides notice of termination at least 180 days prior to the expiration of the applicable period. The Walmart Program Agreement can be terminated by Walmart with at least 270 days notice to us (provided that Walmart cannot replace us during the then-remaining term of the Walmart Program Agreement with a digital offers program created by Walmart or a third-party), and may be terminated under certain circumstances including for material breach by either party. If Walmart terminated or elected not to renew the Walmart Program Agreement with us, our business, financial condition, results of operations, and prospects would be adversely affected.

***Publishers may also ask to modify their agreement terms in a cost-prohibitive or strategically detrimental manner when their agreements are up for renewal. Our***

9

> ***inability to maintain our relationships with our publishers on terms consistent with or better than those already in place and that are otherwise favorable to us could increase competitive pressure and/or offering pricing, and otherwise adversely affect our business, financial condition, results of operations, and prospects.*** Retailer consolidation may also result in a decrease in or cessation of engagement with Ibotta, or result in Ibotta receiving less favorable contract terms with the consolidated entity. Publishers have and could in the future also experience downturns, store closures, or failures (including due to macroeconomic pressures) of their own businesses, or fail to adopt our additional offerings or fulfillment methods, or cease using Ibotta altogether for many reasons."

(Underlined emphasis added.)

36.     The statements in ¶ 35 were false and/or misleading when made because they did not properly warn investors of the risks concerning Ibotta's contract with The Kroger Co. ("Kroger"). Kroger's contract was at-will, and Ibotta failed to warn investors that a large client could cancel their contract with Ibotta without warning. Despite providing a detailed explanation of the terms of Ibotta's contract with Walmart, there was not a single warning of the at-will nature of Kroger's contract.

37.     Rather than disclosing the very real risk of a major client walking away at any time, Ibotta provided boilerplate warnings concerning the importance of maintaining ongoing relationships with their clients.

38.     On August 13, 2024, after market hours, the Company filed with the SEC a quarterly report on Form 10-Q for the quarter ended June 30, 2024 ("2Q 2024 10-Q"). The 2Q 2024 10-Q was deemed filed on August 14, 2024 by the SEC. Notably missing from the 2Q 2024 10-Q was any mention of Kroger as Ibotta's client.

39.     The price of Ibotta's securities has plummeted since the IPO, devastating investors. As of the filing of this complaint, Ibotta securities have traded significantly lower than the IPO price of $88.00 per share.

40.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's common shares, Plaintiff and the other Class members have suffered significant losses and damages.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

41.     Plaintiff brings this action as a class action on behalf of all those who purchased Ibotta securities pursuant and/or traceable to the Registration Statement (the "Class").  Excluded from the Class are Defendants and their families, the officers and directors and affiliates of Defendants, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

42.     The members of the Class are so numerous that joinder of all members is impracticable.  While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are at least thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by Ibotta or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

43.     Plaintiff's claims are typical of the claims of the members of the Class, as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

44.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

45.     Common questions of law and fact exist as to all members of the Class and

predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

a)      whether Defendants violated the Securities Act;

b)      whether the Registration Statement contained false or misleading statements of material fact and omitted material information required to be stated therein; and

c)      to what extent the members of the Class have sustained damages and the proper measure of damages.

46.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

## COUNT I
## Violations of Section 11 of the Securities Act Against All Defendants

47.    Plaintiff incorporates all the foregoing by reference.

48.    This Count is brought pursuant to §11 of the Securities Act, 15 U.S.C. §77k, on behalf of the Class, against all Defendants.

49.    The Registration Statement contained untrue statements of material facts, omitted to state other facts necessary to make the statements made not misleading, and omitted to state material facts required to be stated therein.

50.    Defendants are strictly liable to Plaintiff and the Class for the misstatements and omissions.

51.     None of the Defendants named herein made a reasonable investigation or possessed reasonable grounds for the belief that the statements contained in the Registration Statement were true and without omissions of any material facts and were not misleading.

52.     By reason of the conduct herein alleged, each Defendant violated or controlled a person who violated §11 of the Securities Act.

53.     Plaintiff acquired Ibotta securities pursuant to the Registration Statement.

54.     At the time of their purchases of Ibotta securities, Plaintiff and other members of the Class were without knowledge of the facts concerning the wrongful conduct alleged herein and could not have reasonably discovered those facts prior to the disclosures herein.

55.     This claim is brought within one year after discovery of the untrue statements and/or omissions in the Offering that should have been made and/or corrected through the exercise of reasonable diligence, and within three years of the effective date of the Offering. It is therefore timely.

## COUNT II
## Violations of Section 12(a)(2) of the Securities Act Against All Defendants

56.     Plaintiff incorporates all the foregoing by reference.

57.     By means of the defective Prospectus, Defendants promoted, solicited, and sold Ibotta securities to Plaintiff and other members of the Class.

58.     The Prospectus for the IPO contained untrue statements of material fact, and concealed and failed to disclose material facts, as detailed above. Defendants owed Plaintiff and the other members of the Class who purchased Ibotta securities pursuant to the Prospectus the duty to make a reasonable and diligent investigation of the statements contained in the Prospectus to ensure that such statements were true and that there was no omission to state a material fact required to be stated in order to make the statements contained therein not misleading. Defendants,

13

in the exercise of reasonable care, should have known of the misstatements and omissions contained in the Prospectus as set forth above.

59.     Plaintiff did not know, nor in the exercise of reasonable diligence could Plaintiff have known, of the untruths and omissions contained in the Prospectus at the time Plaintiff acquired Ibotta securities.

60.     By reason of the conduct alleged herein, Defendants violated §12(a)(2) of the Securities Act, 15 U.S.C. §77l(a)(2). As a direct and proximate result of such violations, Plaintiff and the other members of the Class who purchased Ibotta securities pursuant to the Prospectus sustained substantial damages in connection with their purchases of the shares. Accordingly, Plaintiff and the other members of the Class who hold the securities issued pursuant to the Prospectus have the right to rescind and recover the consideration paid for their shares, and hereby tender their securities to Defendants sued herein. Class members who have sold their securities seek damages to the extent permitted by law.

61.     This claim is brought within one year after discovery of the untrue statements and/or omissions in the Offering that should have been made and/or corrected through the exercise of reasonable diligence, and within three years of the effective date of the Offering. It is therefore timely.

## COUNT III
### Violations of Section 15 of the Securities Act Against the Individual Defendants

62.     Plaintiff incorporates all the foregoing by reference.

63.     This cause of action is brought pursuant to §15 of the Securities Act, 15 U.S.C. §77o against the Individual Defendants.

64.      The Individual Defendants were controlling persons of Ibotta by virtue of their positions as directors or senior officers of Ibotta. The Individual Defendants each had a series  of

direct and indirect business and personal relationships with other directors and officers and major shareholders of Ibotta. The Company controlled the Individual Defendants and all of Ibotta's employees.

65.    Ibotta and the Individual Defendants were culpable participants in the violations of §§11 and 12(a)(2) of the Securities Act as alleged above, based on their having signed or authorized the signing of the Registration Statement and having otherwise participated in the process which allowed the IPO to be successfully completed.

66.    This claim is brought within one year after discovery of the untrue statements and/or omissions in the Offering that should have been made and/or corrected through the exercise of reasonable diligence, and within three years of the effective date of the Offering. It is therefore timely.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiff, on behalf of himself and the Class, prays for judgment and relief as follows:

(a)    declaring this action to be a proper class action, designating plaintiff as Lead Plaintiff and certifying plaintiff as a class representative under Rule 23 of the Federal Rules of Civil Procedure and designating plaintiff's counsel as Lead Counsel;

(b)    awarding damages in favor of plaintiff and the other Class members against all defendants, jointly and severally, together with interest thereon;

(c)    awarding plaintiff and the Class reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d)    awarding plaintiff and other members of the Class such other and further relief as the Court may deem just and proper.

15

## **JURY TRIAL DEMANDED**

Plaintiff hereby demands a trial by jury.


Dated: April 17, 2025                          **THE ROSEN LAW FIRM, P.A.**


                                               /s/ Phillip Kim
                                               Phillip Kim, Esq.
                                               275 Madison Avenue, 40th Floor
                                               New York, New York 10016
                                               Telephone: (212) 686-1060
                                               Fax: (212) 202-3827
                                               Email: pkim@rosenlegal.com

                                               *Counsel for Plaintiff*

16